UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| TILDA M. MADDEN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 07-373-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | **MEMORANDUM OPINION** |
| of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Tilda Madden ("Madden") and Defendant Michael J. Astrue, Commissioner of Social Security ("Commissioner"). [Record Nos. 10 and 11] Through this action, Madden seeks to reverse the decision of an administrative law judge ("ALJ"), concluding that she was not entitled to Supplemental Security Income. However, the Commissioner contends that the ALJ's decision is supported by substantial evidence and should be affirmed.

For the reasons discussed below, the Court will grant the Commissioner's motion and deny the relief sought by Madden.

**I.     BACKGROUND**

Madden filed an application for a Supplemental Security Income ("SSI") on September 16, 2005.  This claim was denied initially and upon reconsideration.  Thereafter, Madden requested a hearing before an ALJ.  On February 9, 2007, a hearing was conducted before ALJ

-1-

James P. Alderisio.  During the hearing, the ALJ heard testimony from Madden and James H. Miller, a vocational expert.  Thereafter, the ALJ issued a decision denying benefits to Madden.  [Transcript ("Tr."), pp. 12-20]  The ALJ concluded that Madden retained the residual functional capacity to perform a range of light work that requires no climbing of ladders/ropes/scaffolds or more than occasional stooping, kneeling, crouching and crawling.  In addition, the ALJ found that Madden requires a sit/stand option and has a limited but satisfactory ability to deal with work stresses and to understand, remember, and carry out simple, 1-2 step instructions.  [Tr., p. 17] Madden's request for review was denied by the Appeals Council on March 13, 2007.  [Tr., pp. 9-11]

At the time of the administrative hearing, Madden was a 45 year-old individual with a ninth grade education and no past relevant work experience.  [Tr., p. 421] She alleges a disability beginning November 15, 2002, due to stomach problems, shortness of breath, foot spurs, back pain and depression.  [Tr., pp. 423-25]  After reviewing and evaluating the medical evidence of record and the testimony presented at the hearing by Madden, the ALJ found that she had the residual functional capacity to perform a limited range of light work.  [Tr., p. 17]  Based on these findings, the ALJ concluded that Madden was not disabled as defined in the Social Security Act.  [Tr., p. 20]

## II.    LEGAL STANDARD

A claimant's social security disability determination is made by an ALJ in accordance with a five-step analysis.  If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step.  First, a claimant must demonstrate that

she is not currently engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 416.920(b). Second, a claimant must show that she suffers from a severe impairment. 20 C.F.R. § 416.920(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months, which meets or equals a listed impairment, she will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 416.920(d). Fourth, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and the claimant has a severe impairment, the Commissioner will then review the Claimant's residual function capacity ("RFC") and relevant past work to determine if she can do past work. If she can, she is not disabled. 20 C.F.R. § 416.920(f).

Under the fifth step of this analysis, if the claimant's impairment prevents her from doing past work, the Commissioner will consider her RFC, age, education and past work experience to determine if she can perform other work. If she cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002), (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Judicial review of the denial of a claim for social security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Wyatt v. Sec'y of Health and Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The substantial evidence standard "presupposes that there is a zone of

-3-

choice within which decision makers can go either way, without interference from the court." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (quotes and citations omitted).

Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lashley v. Sec'y of Health and Human Servs.*, 708 F.2d 1048, 1053 (6th Cir. 1983). While significant deference is accorded to the ALJ, the standard employed in these cases does not permit a selective reading of the record. Instead, "substantiality of the evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must be taken into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Garcia v. Sec'y of Health and Human Servs.*, 46 F.3d 552, 555 (6th Cir. 1995); *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994); *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Smith v. Sec'y of Health and Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1989). Thus, the Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

In determining whether the ALJ's opinion is supported by substantial evidence, courts may not "try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted). It is the

job of the ALJ to make credibility findings after listening to testimony, observing the claimant's demeanor, and evaluating the testimony in light of the written evidence.   Credibility determinations are particularly within the province of the ALJ.  *Gooch v. Sec'y of Health and Human Servs.*, 833 F.2d 589 (6th Cir. 1987); *Villarreal v. Sec'y of Health and Human Servs.*, 818 F.2d 461, 464 (6th Cir. 1987).

### III.   DISCUSSION

Madden raises two arguments through this action: (1) that the ALJ should have concluded that Dr. Spangler's diagnosis of borderline intelligence was a severe impairment; and (2) that the ALJ failed to present an accurate hypothetical to the VE.

First, Madden argues that the ALJ erred by failing to include the borderline intellectual functioning in the listing of severe impairments.  This argument is based entirely on the findings of Dr. Robert Spangler.  Dr. Spangler examined Madden on July 3, 2006.  Dr. Spangler administered WAIS-III testing to Madden and noted that she obtained a verbal IQ score of 78, performance IQ score of 73 and a full scale IQ score of 74.  As a result of these tests, Dr. Spangler diagnosed Madden with borderline intelligence and found that she did not have the capacity to perform complex tasks.

Although Madden does not explicitly raise a "treating physician" argument, she nonetheless indirectly makes such an argument by asserting that the ALJ should have given great weight to Dr. Spangler's diagnosis of borderline intellectual functioning.  The Sixth Circuit has held that the opinions of treating physicians are entitled to controlling weight.  *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532 (6th Cir. 2007) (citing *Walters v. Comm'r of Soc. Sec.*, 127

-5-

F.3d 525, 529-30 (6th Cir. 1997).  "A physician qualifies as a treating source if the claimant sees

her 'with a frequency consistent with accepted medical practice for the type of treatment and/or

evaluation required for [the] medical condition.'"  *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873,

876 (6th Cir. 2007) (alteration in original) (quoting 20 C.F.R. § 404.1502).

In *Cruse*, the Sixth Circuit stated that a physician who had performed a "New Patient

Evaluation" and had seen the claimant on only two occasions should not be characterized as a

treating physician.  The court noted that the claimant was treated to a similar extent by other

doctors and, therefore, that the physician's opinion should not be given controlling weight over

the opinions of some of the other examining doctors.  *Cruse*, 502 F.3d at 540.  "A plethora of

decisions unanimously hold that a single visit does not constitute a treating relationship."

*Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 506 (6th Cir. 2006) (citing *White v.*

*Barnhart*, 415 F.3d 654, 658 (7th Cir. 2005)).  The Sixth Circuit has also indicated that the

treating physician doctrine is based on the assumption that a medical professional who has dealt

with the claimant and his maladies over a long period of time will have a deeper insight into the

medical condition of the claimant than will a person who has examined a claimant only once.

As previously noted, Dr. Spangler examined Madden on only one occasion.  The ALJ

properly considered his opinion but, based on the totality of the evidence, "decline[d] to give

great weight to th[e] opinion." [Tr., p. 16] Specifically, the ALJ stated that:

> The claimant's borderline intellect would preclude only the performance of
> complex tasks and other higher cognitive functioning.  However, the record
> shows that despite that impairment, there is no evidence of significant limitations
> on the claimant's ability to understand, to remember and carry out simple
> instructions, make simple work-related decisions, deal with changes in a routine
> work setting, and respond appropriately to supervision, co-workers, and usual

work situations (SSR 96-9p).  Dr. Spangler concluded a GAF of 55, indicative of moderate symptoms.  To the contrary, his appended Medical Assessment statement indicated a poor/none ability to deal with work stresses and to demonstrate reliability.  The undersigned, therefore, declines to give great weight to this opinion as it is not consistent with his narrative report and the totality of the evidence.

[Tr., p. 15-16]  The ALJ was entirely within his discretion to discount Dr. Spangler's findings, given that Dr. Spangler only examined Madden on one occasion.  In deciding to give little weight to Dr. Spangler's conclusions, the ALJ noted a lack of consistency between Dr. Spangler's findings and his treatment notes and a lack of consistency between his findings and the overall record.  20 C.F.R. §§ 404.1527(d)(2), 416.927(e)(2).  The remaining evidence supported the ALJ's conclusion that Madden's borderline intelligence was not severe.

Second, Madden contends that the hypothetical question posed to the VE failed to accurately portray her cognitive limitations.  In particular, Madden suggests that her "basic ability to learn, which falls in the lowest 10 percent of the population, was not adequately conveyed to the vocational expert."  [Record No. 10]

Where a hypothetical question fails to describe accurately the claimant's physical and mental impairments, the defect can be fatal to the VE's testimony and the ALJ's reliance on it. An ALJ, however, is not required to restate verbatim a medical report to a VE in order to accurately state a claimant's relevant impairments.  *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988).  Thus, the central question is not whether the hypothetical question posed to the VE recounts all of the medical findings, impairments and conditions, but whether it is a fair, complete and accurate summation regarding the claimant's abilities and overall mental and physical state, based upon the available evidence and testimony.  *See Foster v. Halter*, 279 F.3d

-7-

348, 356 (6th Cir. 2001); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001); *Felinsky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *Davis v. Sec'y of Health & Human Servs.*, 915 F.2d 186, 189 (6th Cir. 1990); *Higgs*, 880 F.2d at 863; *Varley*, 820 F.2d at 779.  Moreover, merely because a claimant was *diagnosed* with a condition does not mean such diagnoses must be included in a hypothetical.  The medical evidence must support such a diagnosis and must support a finding that the diagnosis causes functional debilitation.  *Id.*

> In *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629 (6th Cir. 2004), the Sixth Circuit held that
>
> there is some confusing language in *Howard* that could conceivably be viewed as requiring that hypothetical questions include lists of claimants' medical conditions.  However, we conclude that, given the facts present in *Howard*, that language is not part of its holding, nor can it be so construed if *Howard* is to be read to be consistent with the holdings of our prior decisions.

*Id.* at 631-32.  Thus, the Sixth Circuit has unequivocally stated that the ALJ is *not* required to present an exhaustive list of a claimant's medical or mental conditions to the VE in his hypothetical.

In the present case, the ALJ properly informed the VE of Madden's mental limitations.  The ALJ noted that he afforded "great weight" to the findings of Dr. Jeanne Bennett who performed a consultative examination on December 17, 2005.  Dr. Bennett estimated Madden's global intellectual functioning to be in the average range and indicated that Madden demonstrated adequate comonsense reasoning.  Dr. Bennett diagnosed Madden with dysthymia and dependent personality traits and assessed her with ah Global Assessment of functioning (GAF) score of 60.

Dr. Bennett concluded that Madden's mental impairements did not affect her capacity to understand, remember, and carry out instructions toward the performance of simple, repetitive tasks, her ability to sustian attention and concentration towards the performace of simple, repetitive tasks, and her capacity to respond appropriately to supervision and coworkers in a work setting. [Tr., pp. 166-67] She also found that Madden had moderate limitations in her ability to tolerate the stress and pressure of day-to-day employment. [Tr., p. 166]

The ALJ incorporated Dr. Bennett's functional limitations in the hypothetical question presented to the VE.  Specifically, the ALJ noted that:

> [s]uppose I find she can do light work with the following restrictions: no climbing, no ladders, ropes or scaffolding, no more than occasional stooping, kneeling, crouching, or crawling, a sit/stand option every 45 minutes.  It would be low stress, simple one and two-step instruction jobs.  She's limited but satisfactory in her ability to deal with stress.

[Tr., p. 430]

Having examined the evidence of record, the Court finds that the ALJ's characterization of Madden's limitations based on her cognitive functioning level is supported by substantial evidence.  Because the ALJ accurately described Madden's abilities and limitations in the hypothetical question presented to the VE, and because the VE properly incorporated these abilities and limitations into the responses given to the ALJ, the Court finds that substantial evidence supports the ALJ's determination that Madden is not disabled.

## IV.    CONCLUSION

Accordingly, for the reasons discussed herein, it is hereby **ORDERED** that:

(1)     Defendant Michael J. Astrue's Motion for Summary Judgment [Record No. 11] is **GRANTED**;

(2)     Plaintiff Tilda Madden's Motion for Summary Judgment [Record No. 10] is **DENIED**;

(3)     The administrative decision will be **AFFIRMED** by separate Judgment entered this date.

This 18th day of July, 2008.

Signed By:

*Danny C. Reeves*   DCR

United States District Judge

-10-